# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BARBARA G. MCCLENDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV411 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Barbara G. McClendon seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying her claims for Widow's Disability Insurance Benefits and Supplemental Security Income ("SSI"). The Commissioner's denial decision became final on March 22, 2010, when the Appeals Council found no basis for review of the hearing decision of the Administrative Law Judge ("ALJ"). In this action, the parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

### The Claimant

Plaintiff McClendon was born on March 8, 1957, and was 50 years of age on her amended alleged onset date of disability. She has a limited education. Plaintiff has no past relevant work. Plaintiff alleges disability as of March 8, 2007, due to high blood pressure, poor vision and leg pain.

## The Administrative Proceedings

Plaintiff filed applications for Widow's Disability Insurance Benefits and SSI on May 31, 2007,[1] alleging disability as of June 1, 2006, due to high blood pressure, poor vision and leg pain. Her claims were denied initially and on reconsideration, and Plaintiff filed a request for a hearing. A hearing was held on May 21, 2009, during which Plaintiff amended her alleged onset date to March 8, 2007, her fiftieth birthday. A decision denying benefits was issued on November 18, 2009. Plaintiff filed a request for review, and on March 22, 2010, the Appeals Council found no basis for review of the ALJ's decision. Plaintiff then filed this request for judicial review.

The findings of the ALJ relevant to this review include the following:

1-2. Plaintiff is an unmarried widow of a deceased insured worker and has attained age fifty. She meets the non-disability requirements for disabled widow's benefits under the Social Security Act. The prescribed period ends December 31, 2012.

3. Plaintiff has not engaged in substantial gainful activity since June 1, 2006, the alleged onset date.

---

[1] Plaintiff previously filed applications for Disability Insurance Benefits on June 1, 2006, and January 26, 1991. Both applications were denied at the initial level. Plaintiff also filed applications for SSI on March 11, 1991, July 24, 1991, September 30, 1998, and March 19, 2007. Each of these claims was denied. (Tr. at 110-11.)

4-5.   Plaintiff's lumbar disc disease and depression are severe impairments, but do not meet or medically equal one of the listed impairments in Appendix 1 to Subpart P of Social Security Regulation No. 4.

6.   Plaintiff retains the residual functional capacity to perform medium work with occasional balancing and no climbing ladders, ropes or scaffolds. Plaintiff can perform "simple, routine[,] repetitive tasks (e.g. unskilled work)."

7.   Plaintiff has no past relevant work.

8-9.   Plaintiff was born on March 8, 1957 and was 50 years old, which is defined as an individual closely approaching advanced age, on the amended disability onset date. She has a limited education and is able to communicate in English.

10.   Transferability of job skills is not an issue because Plaintiff does not have past relevant work.

11.   Based on Plaintiff's age, education and work experience, and her residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

12.   Plaintiff has not been under a disability, as defined in the Social Security Act, from March 8, 2007, through the date of the decision.

## The Scope of Review

The scope of judicial review by this Court of the Commissioner's decision denying benefits is limited. *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case *de novo*. *Id.* Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

## Discussion

In making a decision on Plaintiff's claim, the ALJ followed a five-step analysis set out in the Commissioner's regulations. 20 C.F.R. §§ 404.1520, 416.920 (2011). Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. The burden of persuasion is on the claimant through

the fourth step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering her age, education and work experience. *Id.*

In this case, the ALJ found that Plaintiff was married to a deceased insured individual and that she remains unmarried. The ALJ further found that Plaintiff met the disability insured status requirements for widow's benefits under section 202(e) of Social Security Act, and that the prescribed period ends on December 31, 2012. At step one of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability. Proceeding to steps two and three, the ALJ found that Plaintiff suffers from the severe impairments of lumbar disc disease and depression, but does not have an impairment, or combination of impairments, that meets or equals the ones listed in Appendix 1, Subpart P, Regulations Number 4.

The ALJ continued his evaluation at step four, finding that Plaintiff has the residual functional capacity to perform medium work with occasional balancing and no climbing ladders, ropes or scaffolds. The ALJ further found that Plaintiff can perform "simple, routine[,] repetitive tasks (e.g. unskilled work)." The ALJ concluded his evaluation at step five, finding that considering Plaintiff's age, education, work experience and residual functional capacity, Medical-Vocational Rule 203.18 of Table No. 2, Appendix 2, Subpart P, Regulations No. 4 (the "Grids") would direct a finding of "not disabled." The ALJ

further found that Plaintiff's non-exertional limitations have little or no effect on the occupational base of unskilled medium work; therefore, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

In this action for judicial review, Plaintiff first argues that the ALJ's findings regarding Plaintiff's credibility are in error. Plaintiff contends that the ALJ made a variety of errors in characterizing the evidence in the case and failed to discuss probative evidence that is contrary to the ALJ's decision. (*See* Docket No. 10, Pl.'s Mem. of Law, at 13.)

The Fourth Circuit has set out a two-step process for evaluating a plaintiff's credibility with regards to subjective complaints of pain in accordance with the Commissioner's regulations. *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996); 20 C.F.R. §§ 404.1529, 416.929 (2011); *See also* Social Security Ruling 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements* ("SSR 96-7p"). Under the *Craig* analysis, Plaintiff must first produce objective medical evidence of an impairment which could reasonably be expected to produce pain in the amount or degree alleged. In this case, contrary to Plaintiff's assertion,[2] the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. (Tr. at 19.) Therefore, the ALJ found that Plaintiff satisfied step one of the *Craig* test. *Id.*

---

[2] *See* Docket No. 10 at 13.

At step two of the *Craig* analysis, the ALJ must evaluate the intensity, persistence and functionally limiting effects of Plaintiff's pain. The Regulations require the ALJ to consider the location, duration, frequency and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; and daily activities. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also* SSR 96-7p.

Plaintiff argues that the ALJ's analysis of Plaintiff's credibility is flawed because the ALJ mis-characterized the record evidence and ignored evidence favorable to Plaintiff's disability claim. (*See* Docket No. 10 at 13-15.) Plaintiff specifically claims that the ALJ's finding that there is little evidence of severe symptomatology or treatment for her back disorder is contrary to the medical evidence. (*Id.* at 13.) The Court disagrees and finds that the ALJ's finding is supported by substantial evidence. Plaintiff refers to an x-ray taken in 1996 after Plaintiff was in a motor vehicle accident. (*Id.*)(citing Tr. at 366.) In fact, the x-ray showed no evidence of fracture or dislocation, normal alignment of the cervical spine, and some degenerative changes and *marginal* sclerosis of the lower lumbar spine. (Tr. at 366.) Plaintiff was discharged from the hospital with advice to rest, take Advil as needed, apply heat and cold and to follow up with an orthopedic specialist. (*Id.* at 363, 365.) There is no record evidence that Plaintiff sought or received any further treatment for back pain. Indeed, it appears from the record evidence that Plaintiff never again complained of back

pain during any of her many visits to the emergency room for alcohol and/or domestic violence related injuries in the years following her initial complaint.

The ALJ did consider a subsequent spinal x-ray performed on February 11, 2008, in connection with a state consultive examination. (Tr. at 20.) The ALJ acknowledged that the x-ray showed severe degenerative disc disease with slight anterolisthesis, but fairly found that the x-ray did not address the degree of any functional limitation. (*Id.*) Under the Regulations, in addition to providing medical evidence establishing the existence and severity of her claimed impairments, Plaintiff must provide evidence establishing how her impairments affect her functioning. 20 C.F.R. §§ 404.1512(a), 416.912(a) (2011).

The report of the consultive examination by Dr. John A. Surmonte on the same date shows that Plaintiff moved slowly but normally and was able to get on and off the examination table without assistance. (Tr. at 241.) She had a normal gait, could tandem walk and was "fairly" able to stand on her heels and toes. (*Id.* at 242.) She had tenderness in the back but had full range of motion in her extremities and fair range of motion in her neck. (*Id.*) As Plaintiff asserts, Dr. Surmonte concluded that Plaintiff's impairments *could* affect her ability to sit, stand, move, lift, carry and handle objects. He made no conclusion, however, that she *is* in fact so impaired. (*Id.*)

The ALJ also considered, and his finding is supported by, the examination by state consultant Dr. George T. Mills on June 27, 2007. (*See id.* at 19)(citing *id.* at 184-87.) Plaintiff reported "some slight [back] pain, but no daily problems. (*Id.* at 185.) Plaintiff had

slight tenderness in her back, but straight leg raising was negative and "[s]he has no other problems with her back." (*Id.* at 186.)

In this case, the ALJ relied not only on the lack of objective medical evidence to support Plaintiff's subjective complaints of pain, but also on Plaintiff's ability to regularly attend school four hours a day, five days a week. (Tr. at 20.) It is reasonable for the ALJ to have concluded that Plaintiff's activities are inconsistent with her complaints of disabling pain and depression. *See Johnson*, 434 F.3d at 658. He also noted that Plaintiff reported taking only ibuprofen for pain, indicating that her pain is not so severe as to require prescription pain medication. (Tr. at 20.) The weakness of pain medication is a factor that may be considered in assessing the severity of a claimant's pain. *Shively v. Heckler*, 739 F.2d 987, 990 (4th Cir. 1984).

The ALJ's credibility assessment regarding Plaintiff's depressive symptoms is similarly supported by substantial evidence. In making this assessment, the ALJ correctly noted that Plaintiff did not seek treatment from any mental health providers until July, 2008. "[A]n unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility." *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994).

The ALJ's credibility assessment is also supported by the findings of state agency examining psychologists. Dr. Chad Ritterspach, Psy.D., completed a psychological evaluation on August 11, 2007. (*See* Tr. at 188-90.) During the examination, Plaintiff was

articulate and easily understood and she appeared to be an accurate source of information. (*Id.* at 188.) When asked, Plaintiff could not identify any deficiencies in concentration, persistence or pace that prevented her from completing tasks in a timely manner. (*Id.* at 189.) Dr. Ritterspach did opine that Plaintiff's intellectual functioning, memory and concentration are not within normal limits (*id.* at 189), but that she could conform to social standards, comply with rules and regulations, cooperate with authority and interact with peers. (*Id.* at 188.) She could also sustain attention to perform simple, repetitive tasks and tolerate the mental stress and pressures associated with day-to-day work activity. (*Id.* at 190.)

Moreover, non-examining psychologist Dr. Ben Williams, Ph.D., having reviewed Plaintiff's medical records as well as the reports of Drs. Mills and Ritterspach, concluded that Plaintiff is able to understand and remember short and simple instructions; maintain concentration, persistence and pace to complete simple, repetitive tasks; relate to fellow workers and supervisors; adapt to change in a stable work environment; and sustain the basic demands of unskilled work. (Tr. at 193-94.) Non-examining psychologist, Dr. Tovah M. Wax, Ph.D. also found, like Dr. Williams, that Plaintiff is capable of simple, routine, repetitive tasks and is able to maintain concentration, persistence and pace, relate to fellow workers and supervisors, and adapt to change in a stable work environment. (Tr. at 238.)

Plaintiff also argues that Dr. Ritterspach's assessment of her GAF score as 50 and treating psychiatrist Dr. Wei Zhang's assessment of her GAF score as 48 are inconsistent with an ability to work. (Docket No 10 at 15.) The GAF, or global assessment of

functioning, "is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'" *Boyd v. Apfel*, 239 F.3d 698, 700 n. 2 (5th Cir.2001) (*quoting* American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed.1994) ["DSM-IV"] ). A GAF score of 41–50 indicates "[s]erious symptoms (e.g., suicidal ideation ...) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 34. However, the score, standing alone, does not establish an impairment seriously interfering with Plaintiff's ability to perform basic work activities. *Quaite v. Barnhart*, 312 F. Supp.2d 1195, 1200 (E.D. Mo. 2004). There must be evidence that a mental health professional assigned a score because he perceived an impairment in a claimant's ability to work. *See id.* Here, there is no such evidence in the record.

Subsequent medical records also indicate Plaintiff's depression is not as severe as she reports, and is controlled with medication. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (if symptoms are, or can be, reasonably controlled by medication, they may not be considered disabling under the Act). When Dr. Zheng first saw Plaintiff on July 17, 2008, he assigned Plaintiff a GAF score of 48 and prescribed an anti-depressant. (Tr. at 382.) By October 17, 2008, Plaintiff was doing much better with improved mood while taking medication. (*Id.* at 383.)

As Plaintiff points out, there is some evidence in the record supporting her claim of mental limitations. Plaintiff relies on the report by Dr. Mills following his physical

examination of Plaintiff on June 27, 2007. Dr. Mills noted tremors, murmuring instead of talking, a distant look in Plaintiff's eyes and poor memory. (Tr. at 185.) He also reported that Plaintiff has "dysfunction of her brain, which seems to be caused by alcoholism." (*Id.*) He noted that Plaintiff was drinking heavily, that Plaintiff had not threatened suicide, but "certainly [has] reasons and tendency to do so." (*Id.* at 186.) Plaintiff also points to the Dr. Scott T. Schell's psychological evaluation on February 8, 2008. (Docket No. 10 at 15.) Dr. Schell concluded that Plaintiff can understand simple directions and is able to sustain concentration, but that her ability to perform simple, repetitive tasks, form working relationships, and tolerate stress are adversely influenced by her complaints of pain, underlying depression and difficulties in concentration. (Tr. at 218-19.)

However, although there may be some evidence in the record supporting Plaintiff's claim of disability, it is important to remember that it is the ALJ who is responsible for resolving any conflicts in the evidence. "'Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ).'" *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The Court will "not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Id.* (citing *Hays*, 907 F.2d at 1456). Moreover, this analysis by the ALJ is subject to a deferential standard of review.

> The ALJ's determination on the credibility of the plaintiff's testimony regarding pain will be upheld on appeal as long as there is some support in the record for the ALJ's position and it is not patently wrong, since the ALJ is in the best position to observe witnesses and assess their credibility.

*Lewis v. Barnhart*, 201 F. Supp. 2d 918, 935 (N.D. Ind. 2002), *citing Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994). Here, there is substantial record evidence sufficient to support the ALJ's credibility findings.

Plaintiff next argues that the ALJ erred in relying on the Medical-Vocational Guidelines (the "Grids") at step five of the sequential evaluation in light of her non-exertional limitations. (Docket No. 10 at 16.) Specifically, Plaintiff argues that the ALJ's Plaintiff's limitation to "simple, routine[,] repetitive tasks (e.g. unskilled work)" erodes the occupational base of medium work to the extent that testimony from a vocational expert was required.

Having closely considered the ALJ's decision, the Court finds that the ALJ's finding is so ambiguous that the Court is unable to complete a meaningful review of the decision. It is the Commissioner's duty to "present us with findings and determinations sufficiently articulated to permit meaningful judicial review." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983). The reviewing court requires the fact finder "to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003).

As noted above, the ALJ found that Plaintiff is limited to "simple, routine[,] repetitive tasks (e.g. unskilled work)." (Tr. at 18.) "E.g." is an abbreviation for the Latin phrase *exempli gratia* and means, essentially, "for example." Common Errors in English Usage, http://public.wsu.edu/~brians/errors/e.g.html (last visited November 28, 2011). Thus, in making his finding, the ALJ appears to state that unskilled work is a subset (meaning greater limitations) than simple, routine, repetitive tasks. This is an error of reasoning. Unskilled work is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a). "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." Social Security Ruling 85-15, <u>Titles II and XVI: Capability To Do Other Work - The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments</u> ("SSR 85-15"). (Tr. at 18.) Contrary to the ALJ's finding, simple, routine, repetitive work is a narrower category (meaning greater limitations) than unskilled work.[3]

---

[3] The Court need not and does not reach a decision regarding whether a limitation to simple, routine, repetitive tasks significantly erodes the occupational base for unskilled, medium level work.

The ALJ also found that Plaintiff can perform "at least unskilled and possibly some low-end semi-skilled work. (*Id.* at 23.) This finding is plainly different than a finding that Plaintiff can perform only simple, routine, repetitive tasks. In light of the contradictory findings, the Court is left unable to determine what limitations the ALJ actually intended to find. That being so, it is impossible for the Court to afford Plaintiff meaningful review of the Commissioner's findings." *Blakes ex rel. Wolfe*, 331 F.3d at 569. Accordingly, the matter should be remanded so that the Commissioner can make findings that are sufficiently unambiguous that a reviewing court could determine they are rational.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Docket No. 9) be granted, that the Commissioner's motion for judgment on the pleadings (Docket No. 11) be denied, and that this matter be remanded to the Commissioner for further proceedings consistent with this opinion.

/s/ P. Trevor Sharp<br>United States Magistrate Judge

Date: January 4, 2012